FILED
09 BANKRUPTCY COURT
NORTHERN DISTRICT OF IOWA

DEC 1 0 2009

SEAN F. McAVOY, CLERK

Q.B. No. 1461 of 2009

CANADA                              )

PROVINCE OF SASKATCHEWAN           )


### IN THE QUEEN'S BENCH
### JUDICIAL CENTRE OF SASKATOON


**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED (the "CCAA")**


**AND IN THE MATTER OF A PROPOSED PLAN OF ARRANGMENT FOR THE
CREDITORS OF BIG SKY FARMS INC., DRYCAST SYSTEMS INC. AND
BIG SKY MANAGEMENT CONSULTING CORP.**


<u>**FIRST REPORT OF THE MONITOR**</u>


**ERNST & YOUNG INC.**


**DECEMBER 7, 2009**

# TABLE OF CONTENTS
## TO THE
## FIRST REPORT OF THE MONITOR

INTRODUCTION ................................................................................................................ 3

TERMS OF REFERENCE ................................................................................................. 4

BACKGROUND ................................................................................................................. 5

U.S. PROCEEDINGS ......................................................................................................... 6

U.S. AGRICULATURAL LIEN CLAIM ......................................................................... 6

OPERATIONAL UPDATE SINCE THE INITIAL ORDER ........................................ 8

RESTRUCTURING ACTIVITIES ................................................................................. 10

MONITOR'S ACTIVITIES AND COMPLIANCE WITH STATUTORY OBLIGATIONS..... 13

CLAIMS PROCESS ......................................................................................................... 14

APPLICANT'S REQUEST FOR AN EXTENSION TO THE STAY PERIOD ......................... 17

MONITOR'S RECOMMENDATIONS........................................................................... 18

## LISTING OF APPENDICES

| U.S. ORDER | APPENDIX "A" |
| BUDGET TO ACTUAL CASH FLOW ANALYSIS | APPENDIX "B" |
| CLAIMS PROCESS SUMMARY | APPENDIX "C" |

2

**INTRODUCTION**

1.  On November 10, 2009, Big Sky Farms Inc., Drycast Systems Inc. and Big Sky
    Management Consulting Corp. (collectively, the "**Applicants**" or "**Big Sky**") filed for
    and obtained protection from their creditors under the *Companies' Creditors
    Arrangement Act*, R.S.C. 1985 c C-36, as amended, (the "**CCAA**") pursuant to an order
    of this Honourable Court dated November 10, 2009 (the "**Initial Order**").

2.  Pursuant to the Initial Order, Ernst & Young Inc. was appointed monitor of the
    Applicants during these CCAA proceedings (the "**Monitor**").

3.  The Initial Order established a Stay of Proceedings until December 10, 2009 (the "**Stay
    Period**")

4.  The purpose of this first report of the Monitor (the "**First Report**") is to advise this
    Honourable Court with respect to the following:

    a.  The background pertaining to each of the Applicants;

    b.  The background and status of US proceedings commenced pursuant to Chapter 15
        of the U.S. Bankruptcy Code in order to protect the assets of Big Sky located in the
        United States and the interest of all the creditors of Big Sky;

    c.  The existence of potential agricultural lien claims of indeterminable priority filed
        upon the pigs of Big Sky located in Iowa;

    d.  An update with regard to the Applicant's operating cash flow since the Initial
        Order, including the budget to actual variance analysis of the cash flows of Big Sky
        for the period of November 10, 2009 to November 29, 2009 (the "**Reporting
        Period**");

3

    e.    The activities of the Applicants since the Initial Order pertaining to restructuring its financial affairs;

    f.    The activities of the Monitor in accordance with the provisions of the Initial Order and CCAA;

    g.    The basis and requirement for the Applicant's proposed claims process;

    h.    The basis and requirement for the Applicant's request for an extension of the Stay Period; and

    i.    The Monitor's Recommendations.

5.    Capitalized terms not defined in this First Report are as defined in the Initial Order. All references to dollars are in Canadian currency unless otherwise noted.

**TERMS OF REFERENCE**

6.    In preparing this First Report, the Monitor has relied upon unaudited financial information, company records, and discussions with management of the Applicants. The Monitor has not performed an audit, review or other verification of such information. An examination of the financial forecast as outlined in the Canadian Institute of Chartered Accountants Handbook has not been performed. Future orientated financial information relied upon in this report is based on management's assumptions regarding future events and actual results achieved may vary from this information and the variations may be material.

**BACKGROUND**

7.  Big Sky is one of the largest agricultural enterprises in the Province of Saskatchewan, and consists of the following three entities:

   a.  Big Sky Farms Inc.;

   b.  Drycast Systems Inc.; and

   c.  Big Sky Management Consulting Corp.

8.  Big Sky Farms Inc. is the largest hog producer in the Province of Saskatchewan and one of the three largest hog producers in Canada.  The Company operates in approximately 24 communities in rural Saskatchewan and Manitoba and employs approximately 430 employees.  The primary assets of Big Sky Farms Inc. include 20 hog production facilities, 21 feed mills, and a sow herd comprising approximately 42,000 breeding sows.

9.  Drycast Systems Inc. ("**Drycast**"), a wholly owned subsidiary of Big Sky Farms Inc., manufactures slatted concrete flooring and penning used in the construction of hog barns by Big Sky Farms Inc.  At present, Drycast has limited activity.

10. Big Sky Management Consulting Corp. ("**BSMCC**") is affiliated with Big Sky Farms Inc. and was incorporated as a vehicle to facilitate management of third party hog production operations; however, it is inactive at the present time.

11. Further background to Big Sky and its operations are contained in the materials filed relating to the Initial Order including the October 29, 2009, November 2, 2009 and December 4, 2009 affidavits of Mr. Canute Tagseth (the "**October 29, 2009 Tagseth Affidavit**", "**November 2, 2009 Tagseth Affidavit**" and "**December 4 Tagseth Affidavit**" respectively).  These documents, together with other information regarding

5

this CCAA proceeding, including the Initial Order have been posted by the Monitor on its

website at: www.ey.com/ca/bigskyfarms.

## U.S. PROCEEDINGS

12.     As reported in the October 29, 2009 Tagseth Affidavit, Big Sky has approximately

$5,000,000 worth of pigs located in the State of Iowa and a total aggregate amount of

approximately $2,000,000 owing to U.S. based creditors.

13.     In order to protect the U.S. based assets of Big Sky and the interests of all the creditors of

Big Sky, the Monitor filed a petition pursuant to Chapter 15 of the U.S. Bankruptcy Code

in the U.S. Bankruptcy Court for the Northern District of Iowa (the "**US Bankruptcy**

**Court**") seeking provisional relief and a stay of proceeding against the creditors of Big

Sky, pending a full hearing regarding recognition of the Canadian CCAA proceedings as

a foreign main proceeding.  On November 12, 2009, the U.S. Bankruptcy Court made an

Order granting the provisional relief (the "**U.S. Order**") sought.   Attached hereto as

Appendix "A" is the U.S. Order.

14.     A petition, returnable on December 10, 2009, before the US Bankruptcy Court has been

filed pursuant to sections 1515 and 1517 of the US Bankruptcy Code seeking recognition

of this CCAA proceeding as foreign main proceeding and Canada as the centre of main

interest (the "**COMI**").

## U.S. AGRICALATURAL LIEN CLAIM

15.     Iowa law allows an agricultural feed supplier to claim a lien for amounts owed to the feed

supplier.  The lien applies to the livestock that eat the feed that the supplier delivers.  In

order to perfect this lien claim, a feed supplier must file a financing statement with the

6

Iowa Secretary of State not less than thirty-one days from the date of the feed shipment. The lien is extinguished when the bill for the applicable feed shipment is paid. The priority of such a lien in the face of other agricultural liens and senior lender liens is determined by a complex legal and factual analysis. The validity and priority of the agricultural lien is determined pursuant to an analysis of Iowa law.

16.    Immediately prior to the date of the Initial Order, DEL-uxe Feeds, Inc. (**"DEL-uxe"**), a U.S. feed supplier who was owed approximately US$164,398 by Big Sky, perfected an agricultural lien claim purportedly in the foregoing amount. The lien applies to those pigs of Big Sky in the State of Iowa that ate feed supplied by DEL-uxe. On November 11, 2009, the same day DEL-uxe was served notice of the Initial Order, DEL-uxe sent a notice to Sioux-Preme Packing Company (**"Sioux-Preme"**), one of Big Sky's major customers in the United States, in an attempt to enforce its claim to proceeds of the sale of those pigs, which presumably ate feed supplied by DEL-uxe. In this notice, DEL-uxe informed Sioux-Preme of its lien and demanded that Sioux-Preme (i) include DEL-uxe's name on all cheques written to Big Sky and (ii) retain all Big Sky cheques in the United States and not transfer the cheques to Canada (**"Sioux-Preme Demands"**).

17.    As reported above, on November 12, 2009, the U.S. Bankruptcy Court granted the U.S. Order. Pursuant to Paragraph 12(d) and (e) of the U.S. Order, DEL-uxe was specifically prohibited from intercepting, garnishing, or asserting a claim against monies, accounts receivable, or other amounts payable to Big Sky by any party (including, without limitation) Sioux-Preme. To preserve the respective status quo positions of the parties, including the lien claim filed by DEL-uxe, Big Sky has undertaken to maintain in a separate interest-bearing U.S. dollar bank account, an amount equal to the amount owed

7

to DEL-uxe of $164,398 U.S. Dollars, pending a final determination of its lien rights and the priority of such lien rights, should such exist, as between DEL-uxe and the Senior Secured Debt Holders.

18.    DEL-uxe has accepted Big Sky's undertaking and withdrawn the Sioux-Preme Demands. The appropriate funds have been retained by Big Sky and are in the process of being set aside into a designated bank account as undertaken by Big Sky.  A brief delay has been experienced in getting the separate U.S. dollar bank account established, but management of Big Sky reports that such an account is expected to be open (and the required funds deposited therein) in relatively short order.

**OPERATIONAL UPDATE SINCE THE INITIAL ORDER**

19.    Attached as Appendix "B" to this First Report is a summary of Big Sky's actual receipts and disbursements for the Reporting Period.  Detailed explanations of the variances of actual from budget are described in the notes to Appendix "B".  The table below provides a summary of the budget to actual cash flow of Big Sky for the Reporting Period:

| Big Sky Farms Budget to Actual Cash Flow Analysis Nov. 8 - 29 ('000's) | Budget | Actual | Difference |
|---|---|---|---|
| **Receipts** | | | |
| Operating Receipts | 6,020 | 5,458 | (562) |
| Other Receipts | 860 | 226 | (634) |
| **Total receipts** | 6,880 | 5,684 | (1,196) |
| **Disbursements** | | | |
| Operating Disbursements | 7,050 | 5,207 | 1,843 |
| Other Disbursements | 712 | 20 | 692 |
| **Total disbursements** | 7,762 | 5,227 | 2,535 |
| **Net Change in Cash** | **(882)** | **457** | **1,339** |
| DIP Financing | 1,521 | - | (1,521) |
| Opening Cash | (388) | (440) | (52) |
| **Ending Cash** | **250** | **17** | **(233)** |

20.    Receipts for the Reporting Period totalled approximately $5.7 million whereas the cash flow forecast filed with the initial application (the "**Initial Order Projections**") forecast approximately $6.9 million.  The negative variance of approximately ($1.2 million) is primarily due to:

    a.    The average sale price per market hog over the Reporting Period was $8.70 less than the estimated sale price of $115.95.  Cash hog prices fell over the Reporting Period as against the future prices used for preparation of the Initial Order Projections.  Management expects prices to increase in the coming weeks;

    b.    Sale volume of market hogs was approximately 1.5% lower (724 hogs) than expected due to the U.S. Thanksgiving holidays, which caused a temporary delay in sales; and

    c.    The receipt of $750,000 from the Canadian Agricultural Income Stability (CAIS) program expected to be received during the Reporting Period was not received until December 1st, the week subsequent to the Reporting Period.

21.    Disbursements for the Reporting Period totalled approximately $5.2 million versus budgeted disbursements of approximately $7.8 million representing a favourable variance of approximately $2.5 million.  This positive variance is primarily due to a combination of the following:

    a.    The budgeted feed costs per the Initial Order Projections was approximately $4.9 million; however, only $3.5 million was paid as existing feed inventory levels were sufficient to sustain operations and the Applicant was successful in establishing

credit terms with a number of its suppliers; resulting in a positive variance of approximately $1.4 million;

b.    Similar to feed costs, many of Big Sky's vendors have agreed to continue to supply goods and services on credit terms resulting in a positive variance of approximately $400,000 in operating costs during the Reporting Period. The variance is effectively a timing difference as these expenses will be paid in the future; and

c.    A significant favourable variance relating to professional fees occurred; however, this is mostly related to the timing of invoices. Payment of professional fees is expected to occur within the next couple of weeks.

22.    Overall, Big Sky's net cash flow exceeded the budgeted cash flow for the Reporting Period by approximately $1.3 million. This positive variance is mainly attributable to Big Sky's ability to negotiate credit terms with it suppliers, which has allowed the Company to preserve and manage its cash flow.

23.    Throughout the Reporting Period, Big Sky has been able to manage its cash flow generated from operations so as to negate a requirement to draw on the debtor-in-possession (DIP) credit facility.

24.    Based on the foregoing, nothing has come to the attention of the Monitor to suggest that the Initial Order Projections are not, in all material aspects, reasonable having regard to the probable and hypothetical assumptions pursuant to which they were prepared.

**RESTRUCTURING ACTIVITIES**

25.    Since the date of the Initial Order, the Monitor has encouraged dialogue between the Applicants and their major stakeholders, including the Senior Secured Debt Holders, the

Subordinated Debt Holders and the Directors of the Company. The purpose of these discussions was to elicit agreement amongst the stakeholder groups that would result in the identification and crystallization of a restructuring option that would promote the viability of Big Sky as a going concern enterprise.

26.     The major stakeholders have achieved substantive agreement as to the recapitalization of Big Sky through the conversion of the Subordinated Debt to equity and a timeframe for the initiation of a process to identify new capital. In addition, Big Sky is currently in discussions with the Senior Secured Debt Holders pertaining to the financing terms of the exit financing facility that would include an extended amortization period.

27.     The agreement amongst the stakeholders, once formalized, will form the basis of a restructuring plan (the **"Plan of Arrangement"**) for consideration by the creditors, which will permit the company to continue in business under its current structure and scale. Big Sky anticipates filing the Plan of Arrangement with this Honourable Court on or before December 23, 2009.

28.     In addition to the advancement of the recapitalization of Big Sky, management has undertaken various initiatives to maintain the efficiency of operations and to address the concerns of its stakeholders, including:

a.   Working diligently to address supplier concerns resulting from the Initial Order, which has enabled Big Sky to maintain key supplier relationships and payment terms on post-CCAA purchases;

b.   Introducing a grain delivery incentive program to encourage local area grain farmers affected by the CCAA proceedings to deliver required feed grains to

11

provide for the welfare of the animals.   The incentive program provides a marginal premium above posted prices for each bushel of barley or wheat delivered within prescribed time lines;

c.   Commencing the re-negotiation of certain lease and financing arrangements to align the cost underpinning such agreements with the fair market value of the subject assets;

d.   Developing and executing a communication protocol that addressed the needs and answered the vast majority of the inquiries of customers, suppliers and employees, and  permitted senior management and the staff to focus on the day-to-day operations and restructuring of Big Sky;

e.    Acting with diligence and dispatch to address employee concerns, such that Big Sky has not experienced any material employee turnover as a result of the onset of the CCAA proceedings; and

f.   Maintaining strict controls over production performance to ensure that the average hog weights achieved are within the optimal full value range to provide maximum return.

29.   It is the view of the Monitor that the Applicants are acting in good faith and with due diligence with regards to their restructuring efforts.

**MONITOR'S ACTIVITIES AND COMPLIANCE WITH STATUTORY OBLIGATIONS**

30. Pursuant to the terms of the Initial Order and Section 23 of the CCAA, the Monitor has completed the following notice and service requirements:

    a. Published in the *Saskatoon StarPhoenix, Regina Leader-Post, and Winnipeg Free Press* newspapers, once a week for two consecutive weeks, being November 16 and 23, 2009, a notice containing the prescribed information under the CCAA;

    b. Within five days after the date of the Initial Order:

        i. Made the Initial Order publicly available by posting a copy on the Monitor's website (www.ey.com/ca/bigskyfarms);

        ii. Sent, by mail, notice to every known creditor advising them that the Initial Order is publicly available on the Monitor's website; and

        iii. Prepared a list of creditors including the names, addresses, and estimated amounts owed and made the list publicly available on the Monitor's website; and

    c. Prepared and kept current a service list containing the names, addresses, telephone, fax and/or email contact information of those creditors who have filed a Demand for Notice and made the said service list publicly available on the Monitor's website;

31. In addition to the foregoing statutory obligations and those matters outlined elsewhere in the First Report, the Monitor has, *inter alia*:

    a. Prepared for distribution to the Senior Secured Debt Holders a weekly debtor-in-possession lender reporting package;

13

b. Prepared a liquidation analysis of the assets of Big Sky for purpose of commenting on the adequacy of the Plan of Arrangement, once filed;

c. Reviewed all disbursements of Big Sky to ensure compliance with the provisions of the Initial Order;

d. Attended in Sioux City, Iowa for purpose of testifying at the Chapter 15 proceeding before the US Bankruptcy Court;

e. Reviewed the enforceability of the security held by the Senior Secured Debt Holders;

f. Responded in a timely manner to the inquiries of several hundred creditors;

g. Assisted senior management in the development of the communication protocol and individual communication documents;

h. Prepared and filed the debtor company information summary with the Superintendent of Bankruptcy; and

i. Assisted senior management and the Company's advisors with respect to the CCAA process, including the necessary procedural aspects of the proceedings.

**CLAIMS PROCESS**

32. The Applicants has filed a motion with this Honourable Court requesting an order (the **"Claims Process Order"**) approving a claims process which will call for claims of creditors and establish a claims bar date by which creditors must file a claim in these CCAA proceedings. Attached as Appendix "C" is the claims process summary that describes the claims process in detail. Capitalized terms describing the claims process,

14

and as set out below, shall have the meaning ascribed to them in the claims process summary.

33.   A summary of the major provisions within the claims process include:

a.   The call for claims will include the claims of all Known Creditors of Big Sky, which the books and records of the Applicants disclose were owed money as of the Filing Date and which obligation remain unpaid in whole or in part, excluding the claims of the Senior Secured Debt Holders;

b.   All Known Creditors of Big Sky will receive a Claims Package that includes a copy of the Claims Process Order, Instruction Letter, a Proof of Claim and such other materials as the Applicants or the Monitor consider necessary or appropriate;

c.   Notice of the Claims Process will be published in the Saskatoon StarPhoenix, Regina Leader-Post, and Winnipeg Free Press newspapers before December 18, 2009;

d.   The proposed Claims Bar Date, the date by which creditors must file a proof of claim form with the Applicants, is 5:00 p.m. (Central Standard Time) on January 15, 2010;

e.   Should the Applicants disagree with the amount or classification of the claim filed by the creditor, failing a negotiated resolution to the claim amount or classification, the Applicant will issue a Notice of Revision or Disallowance, which notice would serve to revise or reject a creditor's claim as set out in its proof of claim.  The Notice of Revision or Disallowance would be final and

15

conclusive upon the creditor unless disputed by the creditor within 14 days of issuance.

    f.   A creditor that disputes the Notice of Revision or Disallowance issued by the Applicants may issue a Notice of Dispute, which notice sets out the basis on which the creditor rejects the Notice of Revision or Disallowance issued by the Applicant. Claims to which a Dispute Notice has been issued, failing a negotiated resolution, will be referred to a Claims Officer for adjudication. The findings and conclusions of the Claims Officer are final and conclusive, unless such decision is appealed to for a final determination by this Honourable Court.

34.     A timeline of the procedural steps in the Claims Process is as follows:

| Claims Process Timeline | |
| --- | --- |
| **Task** | **Timing** |
| Mailing of Claims Package to Creditors | December 11, 2009 |
| Posting of Claims Package on the Monitor's website | December 11, 2009 |
| Newspaper advertisement of Claims Process | On or before December 18, 2009 |
| Mailing of Claims Package to Subsequent Creditors, if any identified | Within 5 days of Notice of Repudiation or Disclaimer |
| Claims Bar Date | January 15, 2010 |
| Notice of Dispute | Within 14 days of the date of the Notice of Revision or |

16

35.    It is the view of the Monitor that the Claims Bar Date is reasonable as it provides more

than 30 days from the date by which the Applicants must send out the Claims Package to

Known Creditors of Big Sky, providing the creditors with ample opportunity to evaluate

the amount and classification of their Claim against the Applicants and submit the

necessary Proof of Claim.

36.    It is further the view of the Monitor that: (i) the accounting records of Big Sky are

sufficiently accurate to identify Known Creditors; and (ii) the newspaper advertisements,

as described above, in the jurisdictions where the majority of Big Sky operations are

located will provide sufficient notice to creditors not contained in the accounting records

of Big Sky, if any.   Based on the foregoing, the Monitor is of the view that the claims

process will provide potential creditors with sufficient and timely notification to allow

them to submit their Proof of Claim prior to the Claims Bar Date.

37.    Based on the foregoing, the Monitor recommends that this Honourable Court grant an

Order approving the claims process as proposed by the Applicants.

**APPLICANT'S REQUEST FOR AN EXTENSION TO THE STAY PERIOD**

38.    Pursuant to the Initial Order, the Stay Period continues until and including, December 9,

2009.   The Applicants are seeking an extension of the Stay Period until and including,

February 1, 2010.

39.    An extension of the Stay Period is necessary to allow the Applicants to continue its

efforts to finalize a Plan of Arrangement that reflects the substantive terms of an

agreement in principle that has been achieved with its major stakeholders.

40.     The Monitor is advised that the major stakeholders, including the Senior Secured Debt
        Holders and Subordinated Debt Holders continue to support Big Sky in its restructuring
        efforts, including in respect of the requested extension.

41.     It is the view of the Monitor that the Applicants have been pursuing the advancement of
        its restructuring efforts in good faith and with due diligence.

42.     Based on the foregoing, the Monitor recommends that this Honourable Court grant an
        Order extending the Stay Period to February 1, 2010.

**MONITOR'S RECOMMENDATIONS**

43.     Based on the foregoing, the Monitor recommends that that this Honourable Court grant
        an Order approving:

        a.   the Claims Process Order as proposed by the Applicants; and

        b.   An extension of the Stay Period as outlined in the Initial Order from December
             10, 2009 to, and including, February 1, 2010.

All of which is respectfully submitted this 7th day of December 2009.

**ERNST & YOUNG INC.**
**in its capacity as Court Appointed Monitor**
**of Big Sky Farms Inc., Drycast Systems Inc.**
**and Big Sky Management Consulting Corp.**

Sean C. MacNeil, CGA, CIRP
Vice-President

# APPENDIX "A"

# U.S. ORDER

## UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| In re: | ) | Case No. 09-03293 |
| | ) | Chapter 15 |
| Petition of Big Sky Farms Inc. by | ) | |
| Ernst & Young Inc., as its Monitor, | ) | ORDER GRANTING |
| | ) | PROVISIONAL RELIEF |
| Debtor in a Foreign Proceeding. | ) | PURSUANT TO 11 U.S.C. §1519 |
| | ) | |

This matter comes before the Court for hearing on November 12, 2009, on the Motion for Provisional Relief Pursuant to 11 U.S.C. §1519 (the "Motion") filed by Ernst & Young Inc., as the Monitor of Big Sky Farms Inc. (the "Petitioner") on November 10, 2009. Upon review of the Petition for Recognition of a Foreign Proceeding Pursuant to 11 U.S.C. §§1515 and 1517, (the "Petition") filed on November 10, 2009, and the Certificate of Service filed by Petitioner's counsel, the Court finds that the Petitioner has served copies of the Petition, the Motion and the Order setting the hearing on the Motion on all parties against whom the Petitioner is seeking provisional relief. Upon review of the Petition and Motion, and hearing the arguments presented by counsel at the hearing, the Court finds that relief to protect the assets of Big Sky Farms Inc. ("Big Sky") located in Iowa and the interests of all of the creditors of Big Sky is necessary and appropriate and, accordingly, finds the Motion should be granted.

THE COURT FINDS:

1.    This Chapter 15 case arises out of an application of Big Sky Farms Inc. and the consent of Ernst & Young Inc., an international insolvency and restructuring firm, to act as Monitor of the Debtor. Certified copies of the Order entered by the Court of Queen's Bench for Saskatchewan, Judicial Centre of Saskatoon (the "Canadian Court" under the Companies' Creditors Arrangement Act for Big Sky, Q.B. No. 1461 of 2009 (the "Canadian Proceeding") on November 10, 2009, appointing the Monitor and the Consent to Appointment of the Monitor are attached to the Petition.

2.    The Monitor is a foreign representative acting as Monitor for Big Sky Farms Inc., a corporation formed under the laws of Saskatchewan. The Monitor has been appointed by the Canadian Court and receives its authority from orders entered by the Canadian Court.

3.    The Monitor is seeking immediate imposition of the automatic stay pursuant to Bankruptcy Code Section 362 pending recognition of the Chapter 15 Petition in order to protect all of the assets of Big Sky located in Iowa in the United States (collectively, the "Assets"), including, without limitation, approximately 53,000 wean-to-finish pigs and finishing pigs ("Pigs") in the possession of various contract growers located in northwest Iowa and a pork processing plant located in Sioux Center, Iowa.

4.    Section 1519(a) provides that this Court may, at the request of the foreign representative, where relief is urgently needed to protect the assets of the debtor or the interests of the creditors, grant relief of a provisional nature, including staying execution against the

#1760009

debtor's assets located in the United States, to the foreign representative in order to protect and preserve the value of assets that, by their nature or because of other circumstances, are perishable, susceptible to devaluation or otherwise in jeopardy, and any additional relief as may be appropriate.

5.      The Pigs are in the possession of various contract growers and a processing plant in Iowa pursuant to certain executory contracts between Big Sky and the individuals or entities. In addition, various feed suppliers have agreements to supply feed to Big Sky which is vital to the health and survival of the Pigs of Big Sky. Further, some creditors may claim an interest in or lien upon the Pigs of Big Sky and/or be in a position to supply goods or services vital to the health and survival of the Pigs of Big Sky or the Debtor's realization of the value of the Pigs.

6.      Pursuant to the Order of the Court of Queen's Bench for Saskatchewan, Judicial Centre of Saskatoon, Q.B. No. 1461 on November 10, 2009 (the "Order"), the Canadian Court ordered that "all Persons having oral or written agreements with the Applicants . . . for the supply of goods and/or services, including without limitation all . . . utility services, goods and services provided by the Lease Operators or other services to the Business or the Applicants, are hereby restrained until further Order of this Court from discontinuing, altering, interfering with or terminating the supply of such goods or services as may be required by the Applicants, . . . provided in each case that the normal prices or charges for all such goods or services received after the date of this Order are paid by the Applicants in accordance with normal payment practices of the Applicants or such other practices as may be agreed upon by the supplier or service provider and each of the Applicants and the Monitor, or as may be ordered by this Court." See Order of the Canadian Court, ¶18.

7.      In addition, the Order of the Canadian Court provides that "no Person shall be prohibited from requiring immediate payment for goods, services, use of leased or licensed property or other valuable consideration provided on or after the date of this Order, nor shall any Person be under any obligation after the making of this Order to provide goods or services on credit or to provide further advances of money or credit to the Applicants." See Order of the Canadian Court, ¶19.

8.      Relief under Section 1519 of the Bankruptcy Code is available where the foreign representative can satisfy the standards for injunctive relief including: (a) whether the movant has shown a reasonable probability of success on the merits; (b) whether the movant will be irreparably injured by denial of the relief; (c) whether granting preliminary relief will result in even greater harm to the non-moving party; and (d) whether granting the preliminary relief will be in the public interest.

9.      The Monitor has demonstrated a reasonable probability that the Canadian Proceeding will be recognized as a foreign main proceeding.

10.     The provisional application of the automatic stay under Section 362 of the Bankruptcy Code in this case is critical to the prevention of irreparable damage to the value of the Assets of the Debtor, including the Pigs of Big Sky.

11.    No harm will result to any party that is greater than the harm to the estate of the Debtor in the absence of the requested relief extending through the disposition of the Chapter 15 Petition. By contrast, if the provisional relief sought herein is not granted, then the Debtor is at risk of immediate and irreparable harm to or appropriation of its Pigs and other Assets.

12.    Providing the requested relief would effectuate the public policy considerations supporting Section 1525 of the Bankruptcy Code which mandates cooperation "to the maximum extent possible" between this Court and the Canadian Court and the Monitor.

IT IS ORDERED from the time of the filing of the Petition until this Court's ruling on the Petition, the Court grants the following relief of a provisional nature:

(a)    Staying execution against the assets of Big Sky located in Iowa and the United States and all other actions described in 11 U.S.C. §362(a) against Big Sky and its assets;

(b)    Entrusting the protection and preservation of all of the assets of Big Sky located in the United States to Big Sky under the supervision of the Monitor and subject to orders of the Canadian Court in the Canadian Proceeding in order to preserve the value of the assets that, by their nature or because of other circumstances, are perishable, susceptible to devaluation or otherwise in jeopardy;

(c)    Prohibiting the interference or discontinuance of any right or agreement in favor of Big Sky for the provision of goods and services, provided in each case that the normal prices or charges for all goods and services provided to Big Sky on after November 10, 2009, are paid by Big Sky in accordance with normal payment practices; provided, however, no individual or entity shall be prohibited from requiring immediate payment for goods, services or other valuable consideration provided on and after November 10, 2009, and no person shall be under any obligation to provide goods or services on credit or to provide further credit to Big Sky;

(d)    Prohibiting all persons (including, without limitation, DEL-uxe Feeds, Inc. and any and all creditors of Big Sky) from interfering with, intercepting, garnishing or asserting a claim against monies, accounts receivable or other amounts payable to Big Sky by any party (including, without limitation) Sioux-Preme Packing Co.;

(e)    Directing Sioux-Preme Packing Co.:

(i)    to continue to make payments to Big Sky for all goods sold by Big Sky to Sioux-Preme Packing Co. (including, without limitation, pigs and related products) in accordance with ordinary payment terms between Big Sky and Sioux-Preme Packing Co.;

(ii)    to continue to make checks for such payments by Sioux-Preme Packing Co. to Big Sky payable solely to "Big Sky Farms Inc." (and to no other party) and directing that Sioux-Preme Packing Co. shall incur no liability to any party (including, without limitation, DEL-uxe Feeds, Inc.) in so doing; and

-3-

(iii)   to continue to deliver checks for such payments by Sioux-Preme Packing Co. to Big Sky at its offices in Canada in accordance with ordinary payment practices followed by Sioux-Preme Packing Co. in regard to its dealings with Big Sky and directing that Sioux-Preme Packing Co. shall incur no liability to any party including, without limitation, DEL-uxe Feeds Inc.) in so doing;

(f)   Vacating any collection or enforcement actions or proceedings commenced by any creditor of Big Sky (including, without limitation, DEL-uxe Feeds, Inc.), in respect of a debt due by Big Sky to such creditor prior to the making of the Canadian Order, between the time of the making of the Canadian Order, effective as of 12:01 am on November 10, 2009, and the making of this Order of the Court and directing that all parties who have taken any such collection or enforcement actions or proceedings shall forthwith: (a) discontinue such collection or enforcement actions or proceedings; and (b) provide such notice or other remedy as may reasonably be required to vacate or set aside such collection or enforcement action or proceeding; and

(g)   All of such provisional relief shall be effective until such time as the Court enters an order on the Petition or orders otherwise.

DATED AND ENTERED   November 12, 2009

William L. Edmonds, Bankruptcy Judge

-4-

# APPENDIX "B"

# BUDGET TO ACTUAL CASH FLOW ANALYSIS

**Big Sky Farms**
Budget to Actual Cash Flow Analysis
For the Period of November 9, 2009 to November 29, 2009

| Period Start<br>Period End | 09-Nov-09<br>29-Nov-09 | | | |
|---|---|---|---|---|
| | **Budget** | **Actual** | **Variance** | **Notes** |
| **Market Hogs** | | | | |
| Number of Market Hogs Sold | 51,615 | 50,891 | (724) | |
| Average Price per Market Hog | 115.95 | 107.24 | (8.71) | |
| Average Exchange Rate | 1.0500 | 1.0570 | 0.01 | |
| | | | | |
| **SEW and Feeder Hogs** | | | | |
| Number of Feeder Hogs Sold | 2,400 | - | (2,400) | |
| Average Price per Feeder Hog | 29.00 | - | n/a | |
| | | | | |
| **Feed Costs** | | | | |
| Average Feed Cost per Hog | 72.00 | 73.00 | (1.00) | |

**RECEIPTS AND DISBURSEMENTS**

| | Budget | Actual | Variance | Notes |
|---|---|---|---|---|
| **Operating Receipts** | | | | |
| Sales - Market Hogs and Culls | 5,985,006 | 5,457,637 | (527,369) | 1 |
| Sales - SEW and Feeder Hogs | 34,800 | - | (34,800) | 2 |
| Total Operating Receipts | 6,019,806 | 5,457,637 | (562,169) | |
| | | | | |
| **Other Receipts** | | | | |
| GST | 110,000 | 131,275 | 21,275 | 3 |
| Other Income | 750,000 | 94,989 | (655,011) | 4 |
| Total Other Receipts | 860,000 | 226,264 | (633,736) | |
| | | | | |
| **Total Receipts** | 6,879,806 | 5,683,901 | (1,195,905) | |
| | | | | |
| **Operating Disbursements** | | | | |
| Feed Costs | 4,900,000 | 3,474,989 | 1,425,011 | 5 |
| Operating Expenses | 1,400,000 | 1,001,387 | 398,613 | 6 |
| Payroll | 750,000 | 730,911 | 19,089 | 7 |
| Capital Expenditures | - | - | - | |
| Debt Payments - P&I | - | - | - | |
| Total Operating Disbursements | 7,050,000 | 5,207,286 | 1,842,714 | |
| | | | | |
| **Other Disbursements** | | | | |
| Restructuring Costs - Professional Fees | 700,000 | 19,719 | 680,281 | 8 |
| Restructuring costs - DIP and Other | 12,214 | - | 12,214 | 9 |
| Total Other Disbursements | 712,214 | 19,719 | 692,495 | |
| | | | | |
| **Total Disbursements** | 7,762,214 | 5,227,005 | 2,535,209 | |
| | | | | |
| **Total Net Cash Flow** | (882,408) | 456,896 | 1,339,304 | |
| | | | | |
| **Opening Cash** | (388,238) | (440,193) | (51,955) | 10 |
| Total Net Cash Flow | (882,408) | 456,896 | 1,339,304 | 9 |
| DIP Loan Advances (Paydown) | 1,520,646 | - | (1,520,646) | |
| **Closing Cash** | 250,000 | 16,703 | (233,298) | |
| | | | | |
| **Beginning DIP Loan** | - | - | - | |
| Paydown (Advances) | (1,520,646) | - | 1,520,646 | |
| **Closing DIP Loan** | (1,520,646) | - | 1,520,646 | |

**Big Sky Farms**
**Budget to Actual Cash Flow Analysis**
**For the Period of November 9, 2009 to November 29, 2009**

**Notes:**

1   Receipts from the sale of Market Hogs and Culls were less than budget primarily as a result of a decrease in
    the average sale price per hog by $8.70 over the Reporting Period.  In addition, the sales volume was less than
    expected as the U.S. Thanksgiving holidays caused a temporary delay of sales.  Management expects sales in
    the coming week to increase as U.S. customers  refill their inventory in advance of the Christmas season.
    Management believes it will make up the reduced sales as hog futures are improving.

2   Big Sky did not sell any feeder hogs over the reporting period, instead Management decided to retain the
    feeder hogs and intends to raise them to finished market weight, where they expect to realize a higher sales
    value for them.  Big Sky is trying to achieve a higher average weight per market hog, which will require holding
    the inventory for a longer period of time.

3   Receipts related to GST exceeded forecast by approximately $21,000 as Big Sky incurred higher than expected
    input tax credits in the pre-CCAA period.

4   Management had forecast the receipt of $750,000 from a claim the Company filed under the Canadian
    Agricultural Income Stability (CAIS) program, however, the payment was not received until December 1, 2009,
    which extends beyond the Reporting Period.  Other income received during the Reporting Period consists of
    nominal receipts from land rent and the sale of artificial insemination products and manure.

5   Feed costs were lower than expected as the feed inventory on hand at the date of CCAA was sufficient to meet
    immediate requirements.  In addition, many suppliers have agreed to continue supplying feed on credit terms,
    which has allowed Big Sky to manage their cash flow more efficently.  The timing difference resulting from the
    credit terms granted to Big Sky will result in payments being shifted from the Reporting Period to future
    weeks.

6   Similar to the feed suppliers, many of Big Sky's vendors have continued to supply goods and services on credit
    terms, which has result in a positive variance over the Reporting Period; however, payments will be shifted to
    future weeks.

7   Disbursements relating to payroll are consistent with the forecasted amount and the slight positive variance is
    attributable to lower source deductions than estimated.

8   The positive variance relating to professional fees is mostly related to the timing of the receipt of invoices.  The
    variance is effectively a timing variance as these expenses are expected to be paid in future weeks.

9   Throughout the Reporting Period, Big Sky has not had to draw down on the debtor-in-possession (DIP) credit
    facility and the standby interest fee has not yet been charged by the DIP Lender.

10  Opening cash was estimated at approximatley $388,000; however stop payments placed on certain cheques
    issued by the Company prior to the CCAA were not issued in time allowing the bank deficiency to increase by
    $52,000.

# APPENDIX "C"

# CLAIMS PROCESS SUMMARY

9

## SCHEDULE "A"

## CLAIMS PROCESS

<u>**DEFINITIONS**</u>

1.    For purposes of this Claims Process, the following words and phrases shall have the following respective meanings:

    (a)    **"Admission Notice"** means a written notice issued by the Applicants, with the consent of the Monitor, that confirms the amount and classification of a Proven Claim, which notice shall be substantially in the form attached to the Claims Process Order as Schedule "F";

    (b)    **Applicants"** means (collectively) Big Sky Farms Inc., Drycast Systems Inc. and Big Sky Management Consulting Corp.;

    (c)    **"Bar Dates"** means the Claims Bar Date and the Subsequent Claims Bar Date;

    (d)    **"Business Day"** means a day, other than a Saturday or a Sunday, on which banks are generally open for business in the Province of Saskatchewan;

    (e)    **"CCAA"** means the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended;

    (f)    **"Claim"** means (i) any right or claim of any Person that may be asserted or made in whole or in part against the Applicants, whether or not asserted or made, in connection with any indebtedness, liability or obligation of any kind whatsoever, and any interest accrued thereon or costs payable in respect thereof, including without limitation, by reason of the commission of a tort (intentional or unintentional), by reason of any breach of contract or other agreement (oral or written), by reason of any breach of duty (including, without limitation, any legal, statutory, equitable or fiduciary duty) or by reason of any right of ownership of or title to property or assets or right to a trust or deemed trust (statutory, express, implied, resulting, constructive or otherwise), and whether or not any indebtedness, liability or obligation is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, unsecured, present, future, known or unknown, by guarantee, surety or otherwise, and whether or not any right or claim is executory or anticipatory in nature including, without limitation, any right or ability of any Person to advance a claim for contribution or indemnity or otherwise with respect to any matter, action, cause or chose in action whether existing at present or commenced in the future, together with any other rights or claims of any kind that, if unsecured, would be a debt provable in bankruptcy within the meaning of the BIA had the Applicants become bankrupt, and (ii) any Tax Claim. For greater certainty, a Creditor entitled to claim for interest under its applicable agreement with the Applicants may claim for interest that has accrued on its Claim as of the

10

Filing Date, but no claim for interest shall be made for interest accruing after that
date.  In addition, all Claims shall be valued in Canadian dollars, effective as of
the Filing Date, converted at the applicable foreign exchange rate in effect as of
the Filing Date (if applicable);

(g)     **"Claims Bar Date"** means 5:00 p.m. (Central Standard Time) on January 15,
2010, or such other date as may be ordered by the Court;

(h)     **"Claims Officer"** means the individual appointed pursuant to paragraph 2 of the
Claims Process;

(i)     **"Claims Officer's Determination"** means the Claims Officer's determination of
the value of a Claim determined in accordance with paragraphs 22 and 23 hereof;

(j)     **"Claims Officer's Fees"** means the fees and disbursements of the Claims Officer
to be determined by the Monitor in accordance with paragraph 4 of this Order;

(k)     **"Claims Package"** means the document package which shall include a copy of
the Claims Process Order, the Instruction Letter, a Proof of Claim and such other
materials as the Applicants or the Monitor consider necessary or appropriate;

(l)     **"Claims Process"** means the procedures outlined herein in connection with the
assertion of Pre-Filing Claims or Subsequent Claims against the Applicants;

(m)     **"Claims Process Order"** means the Order granted by the Honourable Mr. Justice
N.G. Gabrielson approving of the Claims Process;

(n)     **"Court"** means the Court of Queen's Bench For Saskatchewan;

(o)     **"Dispute Package"** means, with respect to any Pre-Filing Claim or Subsequent
Claim, a copy of the Proof of Claim, Notice of Revision or Disallowance and
Notice of Dispute pertaining to such Pre-Filing Claim or Subsequent Claim;

(p)     **"Excluded Claim"** means:

(i)     any Claim secured by the Administration Charge, the DIP Lender's Charge
or the Directors' Charge (as each such phrase is defined in the Initial
Order);

(ii)    any Claim of Creditors with respect to goods and/or services provided to
the Applicants on or after the Filing Date;

(iii)   that portion of a Claim arising from a cause of action for which the
Applicants are covered by insurance, only to the extent of such coverage;

(iv)    any Claim by or on behalf of the Senior Lenders; and

(v)   any other Claims arising solely as a result of events occurring after the Filing Date (other than Subsequent Claims);

(q)   "**Filing Date**" means November 10, 2009;

(r)   "**Initial Order**" means the Initial Order of the Honourable Mr. Justice N.G. Gabrielson dated and issued in these proceedings on November 10, 2009, as may be amended by further order of the Court;

(s)   "**Instruction Letter**" means the letter regarding completion of a Proof of Claim, which letter shall be substantially in the form attached to the Claims Process Order as Schedule "B";

(t)   "**Known Creditors**" means Creditors which the books and records of the Applicants disclose were owed money by the Applicants as of the Filing Date, which obligation remains unpaid in whole or in part;

(u)   "**Monitor**" means Ernst & Young Inc., in its capacity as the Court-appointed Monitor of the Applicants;

(v)   "**Newspaper Notice**" means the notice of the Claims Process to be published in newspapers in accordance with the Claims Process in substantially the form attached to the Claims Process Order as Schedule "G";

(w)   "**Notice of Dispute**" means the notice that may be delivered by a Creditor who has received a Notice of Revision or Disallowance disputing such Notice of Revision or Disallowance, which notice shall be substantially in the form attached to the Claims Process Order as Schedule "E";

(x)   "**Notice of Repudiation or Disclaimer**" means a written notice in any form issued on or after the Filing Date by the Applicants advising a Person of the disclaimer or repudiation of any contract, lease, employment agreement, or other arrangement or agreements of any nature whatsoever, whether oral or written, and any amending agreement(s) related thereto.   For the purposes of the Claims Process Order only, an agreement on or after the Filing Date restructuring or amending a contract, lease, employment agreement, or other arrangement or agreement of any nature whatsoever, which by its terms expressly provides for a reservation of a Subsequent Claim in these proceedings, shall be deemed to be a Notice of Repudiation or Disclaimer;

(y)   "**Notice of Revision or Disallowance**" means the notice that may be delivered to a Creditor revising or rejecting such Creditor's Pre-Filing Claim or Subsequent Claim as set out in its Proof of Claim in whole or in part, which notice shall be substantially in the form attached to the Claims Process Order as Schedule "D";

(z)   "**Person**" shall be broadly interpreted and shall include an individual, firm, partnership, joint venture, venture capital fund, limited liability company, unlimited liability company, association, trust, corporation, unincorporated

12

association or organization, syndicate, committee, the government of a country or any political subdivision thereof, or any agency, board, tribunal, commission, bureau, instrumentality or department of such government or political subdivision, or any other entity, howsoever designated or constituted, including any Taxing Authority, and the trustees, executors, administrators, or other legal representatives of an individual;

(aa) **"Pre-Filing Claim"** means any Claim other than (i) an Excluded Claim, and a (ii) Subsequent Claim;

(bb) **"Proof of Claim"** means the form to be completed and filed by a Creditor setting forth its Pre-Filing Claim or its Subsequent Claim (as the case may be), which proof of claim shall be substantially in the form attached to the Claims Process Order as Schedule "C";

(cc) **"Proven Claim"** means the amount, status and/or validity of the Claim of a Creditor as finally determined in accordance with this Claims Process (a Proven Claim will be "finally determined" in accordance with this Claims Process when (i) it has been accepted by the Applicants, with the consent of the Monitor, and an Admission Notice in respect of such Claim has been served upon the Creditor by the Applicants, with the consent of the Monitor (ii) the applicable time period for filing a Notice of Dispute in response to a Notice of Revision or Disallowance issued by the Applicants has expired and no Notice of Dispute has been filed in accordance with this Order, or (iv) any court of competent jurisdiction has made a determination with respect to the amount, status and/or validity of the Claim and no appeal or motion for leave to appeal therefrom shall have been taken or served on either party, or if any appeal(s) or motion(s) for leave to appeal or further appeal shall have been taken therefrom or served on either party, any (and all) such appeal(s) or motion(s) shall have been dismissed, finally determined or withdrawn;

(dd) **"Senior Lenders"** shall mean any one or more of Bank of Nova Scotia, Bank of Montreal, National Bank of Canada and Farm Credit Canada;

(ee) **"Subsequent Claim"** means any Claim arising after the Filing Date as a result of the disclaimer or repudiation, after the Filing Date, of any contract, lease, employment agreement, or other arrangement or agreements of any nature whatsoever, whether oral or written, and any amending agreement related thereto;

(ff) **"Subsequent Claims Bar Date"** means the later of (i) the Claims Bar Date and (ii) 5:00 p.m. (local Saskatoon Time) on the day which is 30 days after the date of the Notice of Repudiation or Disclaimer;

(gg) **"Tax"** or **"Taxes"** means any and all amounts subject to a withholding or remitting obligation and any and all taxes, duties, fees, and other governmental charges, duties, impositions and liabilities of any kind whatsoever whether or not assessed by the Taxing Authorities (including any Claims by any of the Taxing

13

Authorities), including all interest, penalties, fines, fees, other charges and additions with respect to such amount;

(hh)    **"Taxing Authorities"** means Her Majesty the Queen, Her Majesty the Queen in right of Canada, Her Majesty the Queen in right of any province or territory of Canada, the Canada Revenue Agency, any similar revenue or taxing authority of each and every province or territory of Canada and any political subdivision thereof, and any Canadian or foreign governmental authority, and "Taxing Authority" means any one of the Taxing Authorities;

(ii)    **"Tax Claim"** means any Claim against the Applicants for any Taxes in respect of any taxation year or period ending on or prior to the Filing Date, and in any case where a taxation year or period commences on or prior to the Filing Date, for any Taxes in respect of or attributable to the portion of the taxation period commencing prior to the Filing Date and up to and including the Filing Date. For greater certainty, a Tax Claim shall include, without limitation, any and all Claims of any Taxing Authority in respect of transfer pricing adjustments and any Canadian or non-resident Tax related thereto; and

(jj)    **"Website"** shall mean the Monitor's website located at www.ey.com/ca/bigskyfarms

## CLAIMS OFFICER

2.    [NTD: NAME OF PERSON] is hereby appointed Claims Officer.

3.    The Applicants, with the consent of the Monitor, are authorized to enter into such agreement with the Claims Officer fixing the reasonable remuneration of the Claims Officer's Fees as the Applicants deem reasonable and appropriate.

4.    Subject to any direction that may be made by further order of the Court, the Claims Officer shall determine the manner, if any, in which evidence may be brought before the Claims Officer in determining the value of a Claim, as well as any other procedural matters that may arise in respect of the Claims Officer's Determination.

## NOTICE OF CLAIMS PROCESS

5.    The Applicants, with the assistance of the Monitor, shall, on or before December 28, 2009, cause a Claims Package to be sent to each Known Creditor, to Canada Revenue Agency and to any similar revenue or taxing authority of each and every province or territory of Canada by regular prepaid mail, fax, or e-mail.

6.    The Monitor shall cause the Newspaper Notice to be published, on or before December 28, 2009 in each of the *Saskatoon StarPhoenix*, *Regina Leader-Post* and *Winnipeg Free Press* newspapers.

7.    The Monitor shall cause the Claims Package to be posted on the Monitor's Website from December 28, 2009 until the expiry of the Claims Bar Date.

14

8.  The Applicants, with the consent of the Monitor, shall cause the Claims Package to be sent to each Creditor with a Subsequent Claim by regular prepaid mail, fax, or e-mail within 5 days of the date of the Notice of Repudiation or Disclaimer applicable to such Subsequent Claim.

9.  The Applicants, with the assistance of the Monitor, shall cause a copy of the Claims Package to be sent to any Person requesting such material as soon as practicable.

## FILING OF PROOFS OF CLAIM

10. Every Creditor asserting a Pre-Filing Claim against the Applicants (or any of them) shall set out its aggregate Pre-Filing Claim in a written Proof of Claim and deliver that Proof of Claim so that it is received by the Monitor on or before the Claims Bar Date.

11. Every Creditor asserting a Subsequent Claim against the Applicants (or any of them) shall set out its aggregate Subsequent Claim in a Proof of Claim and deliver that Proof of Claim so that it is received by the Monitor on or before the Subsequent Claims Bar Date.

## FORM OF PROOF OF CLAIM

12. Each Creditor shall file a separate Proof of Claim in respect of each Applicant against whom such Creditor asserts a Claim.

13. Any Pre-Filing Claim or Subsequent Claim set out in a Proof of Claim shall be expressed in Canadian dollars, failing which such Pre-Filing Claim or Subsequent Claim shall be converted to and shall constitute obligations in Canadian dollars and such calculation will be effected using the Foreign Exchange Rate in effect as at the Filing Date.

## DETERMINATION OF CLAIMS AND SUBSEQUENT CLAIMS

### Review of Proofs of Claim Forms

14. The Applicants shall review each Proof of Claim received by the Claims Bar Date or Subsequent Claims Bar Date as the case may be, and, subject to paragraph 15 of this Claims Process, shall accept, revise or disallow such Pre-Filing Claim or Subsequent Claim with the consent of the Monitor.

15. The Applicants may attempt to consensually resolve the classification and amount of any Pre-Filing Claim or Subsequent Claim with the Creditor prior to the Applicants accepting, revising or disallowing such Pre-Filing Claim or Subsequent Claim with the consent of the Monitor.

16. If the Applicants, with the consent of the Monitor, accept the Pre-Filing Claim or Subsequent Claim, then the Applicants, with the consent of the Monitor, shall serve an Admission Notice upon the Creditor who has submitted such Pre-Filing Claim or Subsequent Claim and such Pre-Filing Claim or Subsequent Claim shall be a Proven Claim.

15

**Notices of Revision or Disallowance**

17.   If the Applicants, with the consent of the Monitor, determine to revise or disallow a Pre-Filing Claim or Subsequent Claim, then the Applicants shall send a Notice of Revision or Disallowance to the Creditor who has filed such Pre-Filing Claim or Subsequent Claim.

**Notice of Dispute**

18.   Any Creditor that disputes the classification or amount of its Pre-Filing Claim or Subsequent Claim as set forth in a Notice of Revision or Disallowance shall deliver a Notice of Dispute to the Monitor by 5:00 p.m. (Central Standard Time) on the day which is 14 days after the date of such Notice of Revision or Disallowance.

19.   Any Creditor who fails to deliver a Notice of Dispute by the deadline set forth in paragraph 18 of this Claims Process shall be deemed to have accepted the classification and the amount of its Pre-Filing Claim or Subsequent Claim as set out in the Notice of Revision or Disallowance and such Pre-Filing Claim or Subsequent Claim as set out in the Notice of Revision or Disallowance shall constitute a Proven Claim.

**Resolution of Claims and Subsequent Claims**

20.   Upon receipt of a Notice of Dispute, the Applicants may: (i) attempt to consensually resolve the classification and amount of the Pre-Filing Claim or Subsequent Claim identified in such Notice of Dispute with the Creditor who has filed same, or (ii) deliver to the Claims Officer the Dispute Package pertaining to the Pre-Filing Claim or Subsequent Claim which is the subject of the Notice of Dispute.

21.   If the Applicants and the Creditor consensually resolve the classification and amount of the Pre-Filing Claim or Subsequent Claim, the Applicants may accept, with the consent of the Monitor, a revised Pre-Filing Claim or Subsequent Claim, and such Pre-Filing Claim or Subsequent Claim will constitute a Proven Claim.   In such event, the Applicants, with the consent of the Monitor, will cause to be served upon the Creditor who has submitted such Pre-Filing Claim or Subsequent Claim an Admission Notice ion respect to such Pre-Filing Claim or Subsequent Claim.

22.   Upon receipt by the Claims Officer of a Dispute Package concerning the value of a Creditor's Claim for voting purposes, the Claims Officer may, in his discretion, schedule and conduct a hearing to determine the value of the Creditor's Claim.   The Claims Officer shall notify the Applicants, the Monitor and the Creditor of his determination of the value of the Creditor's Claim for voting purposes as soon as practicable and, in no event later than five (5) Business Days prior to any meeting of creditors ordered by the Court.

23.   Upon receipt of a Dispute Package concerning the value of a Creditor's Claim for distribution purposes, the Claims Officer may, in his discretion, schedule and conduct a hearing to determine the value of the Creditor's Claim, which hearing may be held concurrently with the hearing to determine the value of the Creditor's Claim for voting purposes. The Claims Officer shall notify the Applicants, the Monitor and the Creditor of

16

his determination of the value of the Creditor's Claim for distribution purposes as soon as practicable.

24.    The Applicants or the Creditor may appeal a Claims Officer's Determination to the Court within five (5) business days of notification of the Claims Officer's Determination of the value of such Creditor's Claim for voting and/or distribution purposes, as the case may be, by serving upon the Applicants or the Creditor, as applicable, and the Monitor and filing with the Court a notice of motion returnable on a date to be fixed by the Court. If an appeal is not filed within such period then the Claims Officer's Determination shall, subject to further order of this Court, be deemed to be final and binding.

17

**SCHEDULE "B"**

**Instruction Letter for the Claims Process of
Big Sky Farms Inc., Drycast Systems Inc. and
Big Sky Management Consulting Corp.**

**(collectively, "Big Sky")**

**A.   Claims Procedure**

By Order of the Honourable Mr. Justice N.G. Gabrielson dated December 9, 2009 (the **"Claims Process Order"**) attached hereto, under the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36 (the **"CCAA"**)., Big Sky has been authorized to conduct a claims process (the **"Claims Process"**).

This letter provides instructions for responding to or completing the Proof of Claim.  Terms in capital letters which are not defined herein shall have the meaning ascribed thereto in the Claims Process Order.

The Claims Process is intended for any Person with a Claim of any kind or nature whatsoever, other than an Excluded Claim, against Big Sky arising on or prior to November 10, 2009, unliquidated, contingent or otherwise.  Please review the Claims Process Order for the complete definitions of Claim and Excluded Claim.

If you have any questions regarding the Claims Process please contact the Court-appointed Monitor at the address provided below.

All notices and inquiries with respect to the Claims Process should be addressed to:

> **The Monitor**
> **Ernst & Young Inc., the Court-appointed Monitor of**
> **Big Sky Farms Inc., Drycast Systems Inc. and Big Sky Management**
> **Consulting Corp.**
> **Attention:  Sean MacNeil**
> **E-mail: Sean.MacNeil@ca.ey.com**
> **Telephone: (604) 891-8262**
> **Fax: (604) 643-5422**
> **c/o Big Sky Farms Inc.**
> **Box 610**
> **Humboldt, Saskatchewan**
> **S0K 2A0**

**B.   General Instructions for Completing the Proof of Claim**

The Proof of Claim must be completed by an individual, or an individual acting on behalf of a corporation.  The individual acting for a corporation or other person must state the capacity in

18

which he or she is acting, such as "Credit Manager", "Treasurer", "Authorized Agent" and so forth. The individual completing the Proof of Claim must have knowledge of the circumstances connected with the Claim. All Proofs of Claim must be signed, dated and witnessed. The full legal name of the Creditor must be filed out in its entirety. Creditors who file a Proof of Claim by a division, or file several Proofs of Claim by divisions, may have their Proof(s) of Claim disallowed. Only one Proof of Claim per legal entity may be filed notwithstanding that separate divisions or operating units of a Creditor may supply and bill Big Sky separately.

A statement of Account containing full details of the Claim must be attached to the Proof of Claim. The Proof of Claim should include all amounts owing to you for any goods or services provided to Big Sky before November 10, 2009. These Claims shall be reduced by the amount of any subsequent payment thereon, the application of any volume or other discounts in respect thereof and any other subsequent credits that are properly applicable against such Claims.

If the Creditor holds security for the indebtness, a statement of the value and nature of the security must accompany the Proof of Claim.

If the Creditor holds a contingent or unliquidated Claim, the details of any guarantee giving rise to such contingent or unliquidated Claim, or reasons for the Claim must be provided in addition to the basis upon which the Claim has been valued.

If the Claim has been sold or assigned, the name of the party purchasing the Claim and the amount of the Claim sold or assigned as well as supporting documentation must be attached to the Proof of Claim submitted. The Proof of Claim can be completed by either the original Creditor or by an assignee, but not both. Creditors and assignee(s) must determine amongst themselves who will file the Proof of Claim.

**C.    For Creditors Submitting a Proof of Claim**

If you believe that you have a Claim against Big Sky you will have to file a Proof of Claim with the Monitor. ***THE PROOF OF CLAIM MUST BE RECEIVED BY 5:00 P.M. (CENTRAL STANDARD TIME) ON JANUARY 15, 2010***, unless the Court orders otherwise.

Additional Proof of Claim forms can be obtained by contacting the Monitor using the contact information listed above and providing particulars as to your name, address, e-mail and facsimile number. Once the Monitor has this information, you will receive, as soon as practicable, additional Proof of Claim forms.

19

## SCHEDULE "C"

**Proof of Claim of Big Sky Farms Inc., Drycast Systems Inc. and Big Sky Management
Consulting Corp. (collectively, "Big Sky")**

Please read carefully the enclosed Instruction Letter for completing this Proof of Claim form.
Terms in capital letters which are not defined within this Proof of Claim form shall have the
meaning ascribed thereto in the Order dated December 9, 2009 as may be amended from time to
time (the "**Claims Process Order**"). **Please print legibly.**

1.    **PARTICULARS OF CREDITOR:**

      (a)    Full Legal Name of Creditor (include trade name, if different):

           _____

           (the "**Creditor**"). The full legal name should be the name of the Creditor of Big
           Sky, notwithstanding whether an assignment of a Claim has occurred prior to or
           following November 10, 2009.

      (b)    Full Mailing Address of the Creditor:  (The mailing address should be the mailing
           address of the Creditor and not an assignee.)

           _____

           _____

      (c)    Other Contact Information of the Creditor:

           Telephone Number: _____

           E-mail Address: _____

           Facsimile Number: _____

           Attention (Contact Person): _____

           Has the Claim set out herein been sold, transferred or assigned by the Creditor to
           another party?

               Yes:  ☐         No:  ☐

20

2.    **PARTICULARS OF ASSIGNEE(S) (IF APPLICABLE)**

*If the Claim set out herein has been sold, transferred or assigned, complete the required information set out below.*

(a)    Full Legal Name of the Assignee:

_____

_____

(b)    Full Mailing Address of the Assignee:

_____

_____

(c)    Other Contact Information of the Assignee:

Telephone Number: _____

E-mail Address: _____

Facsimile Number: _____

Attention (Contact Person): _____

3.    **PROOF OF CLAIM**

**THE UNDERSIGNED HEREBY CERTIFIES AS FOLLOWS:**

(a)    That I:

☐    am a Creditor of Big Sky; OR

☐    am

_____
                    (state position or title)

of

_____
                    (Name of the Creditor)

(b)    That I have knowledge of all the circumstances connected with the Claim described and set out below;

21

(c)   Big Sky was and still is indebted to the Creditor as follows (*include all Claims that you assert against Big Sky*):

$_____CAD [Insert $ value of Claim]

*NOTE:  Claims in a foreign currency are to be converted to Canadian Dollars at the Bank of Canada noon spot rate as of November 10, 2009, being $1.00 CAD = $0.9508 U.S.*

## 4.   NATURE OF CLAIM

### (CHECK AND COMPLETE APPROPRIATE CATEGORY)

[ ] A.  **UNSECURED CLAIM OF $**_____CAD
That in respect of this debt, I do not hold any assets of the debtor as security and
[ ]   Regarding the amount of $_____CAD, I do not claim a right to a priority.

[ ]   Regarding the amount of $_____CAD, I claim a right to a priority under section 136 of the *Bankruptcy and Insolvency Act* (Canada) (the "**BIA**") or would claim such a priority if this Proof of Claim was being filed in accordance with the B IA, or otherwise claim a right to a priority over unsecured creditors.

(Set out on an attached sheet details to support any priority claim)

[ ] B.  **SECURED CLAIM OF $**_____CAD
That in respect of this debt, I hold assets of the debtor valued at $_____CAD as security, the particulars of which are as follows:

_____

_____

*Give the full particulars of the security, including the date on which the security was given and the value at which you assess the security, and attach a copy of the security documents.*

## 5.   PARTICULARS OF THE CLAIM

Other than as already set out herein, the particulars of the undersigned's total Claim against Big Sky are attached on a separate sheet.

*Provide all particulars of the Claim and supporting documentation, including amount, description of transaction(s) or agreement(s) giving rise to the Claim, name of any guarantor which has guaranteed the Claim and amount of invoices, particulars of all credits, discounts and so forth claimed, description of the security, if any, granted by Big Sky to the Creditor and estimated value of such security and particulars of any Claim.*

22

6.    **FILING OF CLAIM**

This Proof of Claim form must be received by the Monitor by no later than **5:00 p.m. (Central Standard Time) on the Claims Bar Date of January 15, 2010,** by either registered mail, personal delivery, courier, e-mail (in PDF format) or facsimile transmission at the following address:

> **The Monitor**
> **Ernst & Young Inc., the Court-appointed Monitor of**
> **Big Sky Farms Inc., Drycast Systems Inc. and Big Sky Management**
> **Consulting Corp.**
> **Attention: Sean MacNeil**
> **E-mail: Sean.MacNeil@ca.ey.com**
> **Telephone: (604) 891-8262**
> **Fax: (604) 643-5422**
> **c/o Big Sky Farms Inc.**
> **Box 610**
> **Humboldt, Saskatchewan**
> **S0K 2A0**

**Failure to file your Proof of Claim and any required documentation as directed in relation to any Claim by 5:00 p.m. (Central Standard Time) on January 15, 2010 will result in your Claim being forever barred and extinguished and you will be prohibited from making or enforcing a Claim against Big Sky and shall not be entitled to further notice or distribution, if any, and shall not be entitled to participate as a Creditor in these proceedings.**

7.    **EXCLUDED CLAIMS**

The following are Excluded Claims and no Person needs to file any claim in respect thereof at this time: (i) any Claim secured by the Administration Charge, the DIP Lender's Charge or the Directors' Charge (as each such phrase is defined in the Initial Order); (ii) any Claim of Creditors with respect to goods and/or services provided to the Applicants on or after the Filing Date; (iii) that portion of a Claim arising from a cause of action for which the Applicants are covered by insurance, only to the extent of such coverage; (iv) any Claim by or on behalf of the Senior Lenders (as such phrase is defined in the Initial Order); and (v) any other Claims arising solely as a result of events occurring after the Filing Date (other than Subsequent Claims);

DATED this _____ day of _____, 20____.

_____          Per: _____

Witness:

                                         Print name of Creditor:

                                         _____

23

*If Creditor is other than an individual, print
name and title of authorized signatory*

Name: _____

Title: _____

24

## SCHEDULE "D"

### Notice of Revision or Disallowance of Big Sky Farms Inc., Drycast Systems Inc. and Big Sky Management Consulting Corp. (collectively, "Big Sky")

Name of Creditor: _____

Reference #: _____

Terms in capital letters which are not defined within this Notice of Revision or Disallowance form have the meaning ascribed thereto in the Claims Process Order dated December 9, 2009. Pursuant to the Claims Process Order, Ernst & Young Inc., in its capacity as Monitor of Big Sky, hereby gives you notice that it has reviewed your Proof of Claim and has revised or rejected your Claim as follows:

A)    Your Claim has been revised or rejected for:

      Voting purposes         ☐

      Distribution purposes     ☐

C)    Revision or Disallowance:

| | Proof of Claim as Submitted | The Revised Claim as Accepted |
|---|---|---|
| **Claim arising prior to November 10, 2009** | | |

D)    Reason for the Revision or Disallowance:

_____

_____

_____

_____

**IF YOU DO NOT AGREE WITH THIS NOTICE OF REVISION OR DISALLOWANCE, PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.    If you intend to dispute this Notice of Revision or Disallowance you must, in relation to a Claim, no later than **[NTD: Date]**, deliver a Dispute Notice by registered mail, personal service, facsimile, e-mail (in PDF format) or courier to the addresses or fax numbers indicated herein. The form of Dispute Notice is attached to this Notice.

25

2.    If you do not deliver a Dispute Notice, the value of your Claim shall be deemed to
be as set out in this Notice of Revision or Disallowance.

*Address for Service of Dispute Notices:*

**The Monitor**
**Ernst & Young Inc., the Court-appointed Monitor of**
**Big Sky Farms Inc., Drycast Systems Inc. and Big Sky Management**
**Consulting Corp.**
**Attention:  Sean MacNeil**
**E-mail:  Sean.MacNeil@ca.ey.com**
**Telephone: (604) 891-8262**
**Fax: (604) 643-5422**
**c/o Big Sky Farms Inc.**
**Box 610**
**Humboldt, Saskatchewan**
**S0K 2A0**

*IF YOU FAIL TO TAKE ACTION WITHIN THE PRESCRIBED TIME PERIODS, THIS*
*NOTICE OF REVISION OR DISALLOWANCE WILL BE BINDING UPON YOU FOR*
*VOTING AND/OR DISTRIBUTION PURPOSES UNDER THE PLAN.*

DATED this _____ day of _____, 20____.

ERNST & YOUNG INC.

In its capacity as Court Appointed Monitor of Big Sky Farms Inc., Drycast Systems Inc. and Big
Sky Management Consulting Corp.

26

## SCHEDULE "E"

### Dispute Notice of Big Sky Farms Inc., Drycast Systems Inc. and Big Sky Management Consulting Corp. (collectively, "Big Sky")

Terms in capital letters which are not defined within this Dispute Notice form have the meaning ascribed thereto in the Claims Process Order dated December 9, 2009.  Pursuant to the Claims Process Order, we hereby give you notice of our intention to dispute the Notice of Revision or Disallowance bearing Reference Number _____ and dated _____, issued by Big Sky in respect of our Claim.

*Name of Creditor:* _____

*Reasons for Dispute (attach additional sheet and copies of all supporting documentation if necessary):*

_____

_____

_____

_____

*Signature of Individual/Authorized Signing Officer:* _____

Date: _____

*(Please print name)* _____

Telephone Number: (    )_____          Facsimile Number: (    )_____

E-mail Address: _____

Full Mailing Address: _____

_____

*THIS FORM AND SUPPORTING DOCUMENTATION TO BE RETURNED BY REGISTERED MAIL, PERSONAL SERVICE, FACSIMILE, E-MAIL (IN PDF FORMAT) OR COURIER TO THE ADDRESS INDICATED HEREIN AND TO BE RECEIVED NO LATER THAN [NTD: DATE]:*

27

*Address for Service of Dispute Notices:*

**The Monitor**
**Ernst & Young Inc., the Court-appointed Monitor of**
**Big Sky Farms Inc., Drycast Systems Inc. and Big Sky Management**
**Consulting Corp.**
**Attention: Sean MacNeil**
**E-mail: Sean.MacNeil@ca.ey.com**
**Telephone: (604) 891-8262**
**Fax: (604) 643-5422**
**c/o Big Sky Farms Inc.**
**Box 610**
**Humboldt, Saskatchewan**
**S0K 2A0**

28

## SCHEDULE "F"

**Admission Notice of Big Sky Farms Inc., Drycast Systems Inc. and Big Sky Management Consulting Corp. (collectively, "Big Sky")**

**Words and Phrases contained in this Admission Notice which are not defined herein shall have the respective meanings ascribed thereto in the Claims Process Order obtained by Big Sky From the Court of Queen's Bench For Saskatchewan, Judicial Centre of Saskatoon on December 9, 2009 in Q.B. No. 1461 of 2009 (the "Claims Process Order")**

**Pursuant to the Claims Process Order, we hereby give you notice of admission of your Claim as a Proven Claim.**

Reference No.:                      _____

Name of Creditor:                   _____

Proof of Claim Date:                _____

Nature of Proven Claim:

      Amount:      $ _____ CAD

      Classification:

[ ] A. **UNSECURED CLAIM OF $_____CAD**
That in respect of this debt, you do not hold any assets of the debtor as security and

    [ ]   Regarding the amount of $_____CAD, you do not claim a right to a priority.

    [ ]   Regarding the amount of $_____CAD, you claim a right to a priority under section 136 of the *Bankruptcy and Insolvency Act* (Canada) (the "**BIA**") or would claim such a priority if this Proof of Claim was being filed in accordance with the B IA, or otherwise claim a right to a priority over unsecured creditors.

[ ] B. **SECURED CLAIM OF $_____CAD**
That in respect of this debt, you hold assets of the debtor valued at $_____CAD as security, the particulars of which as are follows:

_____

_____

29

*Signature of Individual/Authorized Signing Officer:* _____

Date: _____

*(Please print name)* _____

Telephone Number: (    )_____    Facsimile Number: (    )_____

E-mail Address: _____

Full Mailing Address: _____

_____

## SCHEDULE "G"

**Notice to Creditors of Big Sky Farms Inc., Drycast Systems Inc. and Big Sky Management Consulting Corp. (collectively, "Big Sky")**

RE:   NOTICE OF CLAIMS PROCEDURE FOR BIG SKY PURSUANT TO THE *COMPANIES' CREDITORS ARRANGEMENT ACT*

**PLEASE TAKE NOTICE** that this notice is being published pursuant to an order of the Court of Queen's Bench for Saskatchewan dated December 9, 2009 (the "**Order**") establishing a procedure for determining the amount of Claims (as defined in the Order) against Big Sky. The Court has ordered that the Monitor send Proof of Claim forms to the known creditors of Big Sky. Any person who has not received a Proof of Claim form and who believes that they have a claim against Big Sky which claim arose prior to November 10, 2009 should send a completed Proof of Claim to the Monitor to be received by **5:00 p.m. (Central Standard Time) on January 15, 2010** (the "**Claims Bar Date**").

*CLAIMS WHICH ARE NOT RECEIVED BY THE MONITOR BY THE CLAIMS BAR DATE WILL BE BARRED AND EXTINGUISHED FOREVER.*

Creditors who have not received a Proof of Claim from Big Sky or the Monitor should contact Sean MacNeil, Ernst & Young Inc., the Court-appointed Monitor of Big Sky (Telephone: (604) 891-8262, Fax (604) 643-5422, e-mail: Sean.MacNeil@ca.ey.com) to obtain a Proof of Claim package.

**DATED** at _____ this _____ day of _____, 20____.