```
                    UNITED STATES BANKRUPTCY COURT
                   FOR THE NORTHERN DISTRICT OF IOWA
                            WESTERN DIVISION
```

IN RE:

BIG SKY FARMS, INC.                              Chapter 15

    Debtor.                                Bankruptcy No. 09-03293S


```
              ORDER RECOGNIZING FOREIGN PROCEEDING
                        UNDER CHAPTER 15
```

    The matter before the court is a petition for recognition of a foreign proceeding with respect to Big Sky Farms Inc. ("debtor or "Big Sky").  The foreign proceeding is pending before the Queen's Bench, Judicial Centre of Saskatoon, Province of Saskatchewan, Canada ("Canadian Court").  The foreign proceeding is styled *In the Matter of a Proposed Plan of Arrangement for the Creditors of Big Sky Farms Inc., Drycast Systems Inc. and Big Sky Management Consulting Corp.*, case no. 1461 of 2009.  It was filed in the Canadian Court on November 10, 2009 under the Companies' Creditors Arrangement Act, R.S.C. 1985, CC-36, as amended (the "CCAA").  The petitioner is Ernst & Young Inc. in its capacity as monitor ("Monitor") appointed by the Canadian Court.

    The petition for recognition (doc. 2) and notice of hearing on the petition (doc. 17) were served on parties-in-interest and upon all creditors of Big Sky located in the United States (doc. 16).  Two creditors filed objection to the petition, Farmers Cooperative Company of Hinton ("Hinton")(doc. 20) and DEL-uxe Feeds, Inc. ("DEL-uxe")(doc. 28).  Hinton and DEL-uxe each claims to be a secured creditor of Big Sky.  Their objections relate not to whether recognition of the foreign proceeding is appropriate

under the requirements of Chapter 15 of the Bankruptcy Code, but rather as to the effects of such relief upon each of them during the pendency of the chapter 15 case.

Final hearing on the petition and the objections was scheduled for December 30, 2009 in Sioux City, Iowa. Prior to the hearing, the court was advised that the parties had reached agreement on a proposed order granting recognition. It was submitted to the court. In virtue of the agreement and because of inclement weather, the court held the hearing by telephone on the morning of December 30, 2009. Julie Johnson McLean appeared as attorney for the Monitor. Daniel E. DeKoter appeared as attorney for DEL-uxe, and Lance D. Ehmcke appeared as attorney for Hinton. The U.S. trustee did not appear and has not taken any part in these proceedings.

Having considered the record, including the petition, the arguments of counsel, and the proposed order, the court issues the following findings of fact and conclusions of law:

A. This court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 1334 and 157. It is a core proceeding under 28 U.S.C. § 157(b)(2)(P). Venue in this district is proper under 28 U.S.C. § 1410(1) because the principal assets of Big Sky in the United States are located in the Northern District of Iowa.

B. The relevant foreign proceeding is a case entitled <u>In the Matter of the Companies' Creditors Arrangement Act</u>, R.S.C. 1985, C. C-36, as amended (the "CCAA") and <u>In the Matter of a Proposed Plan of Arrangement for the Creditors of Big Sky Farms Inc.</u>

<u>Drycast Systems Inc. and Big Sky Management Consulting Corp.</u>, Q.B. No. 1461 of 2009, which is pending in the Queen's Bench, Judicial Centre of Saskatoon, Province of Saskatchewan, Canada. It was filed in the Canadian Court on November 10, 2009.  The Canadian proceeding is a "foreign proceeding" as defined in 11 U.S.C. § 101(23).

C. The petitioner under chapter 15 is Ernst & Young Inc. which was appointed by the Canadian Court as Monitor in the Canadian proceeding.  Ernst & Young Inc., as Monitor, is a duly appointed and authorized person and "foreign representative" within the meaning of 11 U.S.C. § 101(24).

D. This chapter 15 case was properly commenced pursuant to sections 1504, 1509, and 1515 of the Bankruptcy Code, and the chapter 15 petition satisfies the requirements of §§ 1515 and 1517.

E. The Monitor has satisfied the requirements of 11 U.S.C. § 1515 and the procedural requirements of Fed.R.Bankr.P. 1007(a)(4) and 2002(q).

F. Humbolt, Saskatchewan, Canada is alleged under oath to be the principal place of business of Big Sky Farms Inc. (docs. 1 and 19).  Canada is the center of main interest of Big Sky. Accordingly, the Canadian proceeding is a "foreign main proceeding" pursuant to 11 U.S.C. § 1502(4) and is entitled to recognition as a foreign main proceeding by this court pursuant to 11 U.S.C. § 1517(b)(1).

G. Big Sky maintains assets in the United States that are

3

not subject to the stay in place in the Canadian proceeding. Using terminology from the United States Bankruptcy Code, Big Sky, under the CCAA functions as a debtor in possession of its property both in Canada and the United States.  The Monitor has significant rights and obligations in the foreign proceeding under the CCAA, and the Initial Order entered in the foreign proceeding; however, the Monitor does not have possession of the property of Big Sky as defined in the Initial Order or the authority to operate the business of Big Sky (doc. 2, attachment "A," Initial Order of Canadian Court, p. 15 ¶¶ 28 and 29).

H. The Monitor and Big Sky are entitled to the relief effective upon recognition of a foreign main proceeding under 11 U.S.C. § 1520.  The relief granted by this court is necessary and appropriate, in the interests of the public and international comity, consistent with the public policy of the United States, and warranted under 11 U.S.C. §§ 1515, 1517, and 1520.

NOW, THEREFORE, THE COURT ORDERS AS FOLLOWS:

1. The Canadian proceeding is recognized by this court as a foreign main proceeding pursuant to 11 U.S.C. § 1517.

2. The effects of this recognition include the provisions of 11 U.S.C. § 1520(a), (b), and (c) including, without limitation, the automatic stay of 11 U.S.C. § 362, throughout the duration of this case or until otherwise ordered by this court.  However, as agreed by the Monitor, the automatic stay (i) shall not prevent any creditor from perfecting by filing a financial statement any lien or security interest permitted by law, and (ii) the stay

shall not apply to enjoin any action filed in this court seeking recognition of a lien against property of Big Sky and seeking leave of court to subsequently enforce such lien thereafter.

3. The stay of 11 U.S.C. § 362 shall prohibit all entities from:

> (a) interfering with, intercepting, garnishing or asserting a claim against monies, accounts receivable or other amounts payable to Big Sky by any person, including, without limitation, Sioux-Preme Packing Co., JBS USA, LLC, Swift and Tyson Fresh Meats, Inc., except (i) as may be agreed by Big Sky and the subject person, including, without limitation, DEL-uxe, Hinton or any other feed supplier, in writing and provided to the packer; or (ii) to the extent a final non-appealable Order is entered providing DEL-uxe, Hinton or the feed supplier with adequate protection of its interest under Section 361 of the Bankruptcy Code as provided in paragraph 13 below or providing other relief to the feed supplier;
>
> (b) requiring that any or all payments for goods sold pre-petition by Big Sky to Sioux-Preme Packing Co., JBS USA, LLC, Swift and Tyson Fresh Meats, Inc. (including, without limitation, pigs and related products) be made payable to any person other than "Big Sky Farms Inc.";
>
> (c) requiring that any or all payments for goods sold post-petition by Big Sky to Sioux-Preme Packing Co., JBS USA, LLC, Swift and Tyson Fresh Meats, Inc. (including, without limitation, pigs and related products) be made payable to any person other than "Big Sky Farms Inc." without leave of this Court; provided, however, if there is a departure from normal payment practices, including those payment arrangements put in place immediately after the filing of the Petition, then a feed supplier may give notice of such departure or default by an e-mail identifying in detail such departure or default to Big Sky and the Monitor and, if such departure or default is not cured by Big Sky or otherwise resolved by the parties within forty-eight (48) hours of such notice (which cure period shall not in any event expire prior to the close of business of the second business day in which banks are open for business following such notice), then the feed supplier may give a simple notice of the feed supplier's filing of a financing statement to a packer and of the feed supplier's claimed lien or other interest (without

5

    further demands or instructions seeking payment) and may seek leave of this Court to enforce such alleged lien or other security interest against Big Sky or its property, including, without limitation, permission of the Court to request such packer to make payments payable jointly to Big Sky and to the feed supplier;

    (d) declaring or considering the filing of the Canadian Proceeding or this Chapter 15 case a default or event of default under any agreement, contract or arrangement;

<u>provided</u>, <u>however</u>, in each case, such stay shall be effective solely within the territorial jurisdiction of the United States.

    In order to protect the packers from any consequences resulting from the actions stayed under paragraphs 3 (a), (b) and (c) above, Sioux-Preme Packing Co., JBS USA, LLC, Swift, Tyson Fresh Meats, Inc. and any and all other packers may continue to make payments to Big Sky for all goods sold by Big Sky to them in accordance with ordinary payment terms between Big Sky and the packers, including, without limitation, to continue to make checks for such payments to Big Sky payable solely to "Big Sky Farms Inc." and to continue to deliver such checks to Big Sky at its offices in Canada in accordance with ordinary payment practices, and the packers shall incur no liability to any party (including, without limitation, DEL-uxe, Hinton or any other feed supplier); provided, however, any liens claimed by DEL-uxe, Hinton or any other feed supplier in such payments shall not be prejudiced in so doing.

    4. Pursuant to 11 U.S.C. §§ 362 and 363 creditors may seek relief from the automatic stay and adequate protection of their interests.

6

5. Pursuant to 11 U.S.C. § 1521(a)(6), the provision of the court's Order Granting Provisional Relief, in enforcement of the Initial Order of the Canadian Court, which prohibits the termination of executory contracts with Big Sky shall remain in place and be to the same extent as provided in the Canadian Court's Initial Order.  Any entity desiring to terminate, modify, or alter its executory contract with Big Sky in the United States, must bring a proceeding for such relief in either the Canadian proceeding or this chapter 15 case prior to taking any such action with respect to such contract.  Such entities are prohibited from interfering or discontinuing any right or agreement in favor of Big Sky for the provision of goods and services, provided in each case that the normal prices or charges provided to Big Sky on and after November 10, 2009 are paid by Big Sky in accordance with normal payment practices, including those payment arrangements put in place immediately after the initial notice of the filing of the chapter 15 petition, provided however, this provision shall not require a feed supplier not subject to an ongoing feed supply agreement with Big Sky to continue to sell feed to Big Sky post-petition if it chooses not to sell feed to Big Sky.

6. Subject to any order of the Canadian Court, the Monitor may exercise the rights and powers of a trustee under and to the extent provided by Section 1520 of the Bankruptcy Code.

7. The Monitor may monitor the business and financial affairs of Big Sky in the United States, including the assets of

7

Big Sky in the United States, subject to the orders of the Canadian Court, including, without limitation, any orders of the Canadian Court requesting this Court determine the rights of the parties in assets of Big Sky located within the territorial jurisdiction of the United States, and the proceeds thereof.  Big Sky shall cooperate with the Monitor in the exercise of its powers, including providing the Monitor with full and complete access to the books and records of Big Sky and the assets of Big Sky located in the United States.  In addition to its powers under the Bankruptcy Code, the Monitor may monitor the receipts and disbursements of Big Sky with respect to its operations in the United States and may report to this Court as the Monitor may deem appropriate or as this Court may direct with respect to assets of Big Sky in the United States.  All reports of the Monitor filed in the Canadian Proceeding shall be filed in this Chapter 15 case.

    8. The Monitor is hereby authorized to examine witnesses, take evidence, seek production of documents, and deliver information concerning the assets, affairs, rights, obligations or liabilities of Big Sky, as such information is required in the Canadian Proceeding, subject to the laws of the United States.

    9. The Monitor shall not take possession of the assets of Big Sky in the United States and shall take no part whatsoever in the management or supervision of the management of the business of Big Sky and shall not, by fulfilling its obligations hereunder, be deemed to have taken or maintained possession or

8

control of the business or assets of Big Sky.

10. Except where inconsistent with orders entered by this Court, the Canadian Proceeding shall be granted comity and given full force and effect.

11. Sections 306 and 1510 of Title 11 shall apply in this case.

12. A copy of this Order shall be served, within three (3) business days of entry of this Order, by first-class U.S. mail, postage prepaid, upon: (i) all creditors of Big Sky known to the Debtor within the United States; (ii) all persons or bodies authorized to administer foreign proceedings of the Debtor; (iii) all entities against whom provisional relief is sought under Section 1519 of the Bankruptcy Code; (iv) all parties to litigation pending in the United States in which the Debtor is a party at the time of the filing of the Petition; (v) the Office of the United States Trustee; and (vi) any other person who has filed a notice of appearance in this Chapter 15 case. Such service shall be good and sufficient service and adequate notice for all purposes. United States counsel for the Monitor shall file a certificate of service of this Order in compliance with this Paragraph 12 in this Chapter 15 case.

13. Pursuant to the Initial Order of the Canadian Court and its agreements with Hinton and DEL-uxe, Big Sky may continue to use cash collateral of Hinton and DEL-uxe. Nothing in this Order shall prevent or prejudice Hinton or DEL-uxe from asserting or claiming an interest in or lien against the property of the

9

Debtor that is within the territorial jurisdiction of the United States, and the proceeds of the property originating within the territorial jurisdiction of the United States, wherever such proceeds may be located, or from seeking adequate protection of its interest under Section 361 of the Bankruptcy Code; provided, however, no action may be commenced and no lien claims for any debt may be enforced by Hinton or DEL-uxe without leave of this Court.

    14. With respect to the account in the amount of $164,398 U.S. Dollars which is alleged to be equal to the retail cost of feed and other agricultural products alleged to have been supplied pre-petition to Big Sky by DEL-uxe according to the books and records of the Debtor as of the filing date, subject to the parties' rights to modify such amount, any lien of DEL-uxe which may exist in such proceeds for pre-petition debt is hereby transferred to such account and said account constitutes adequate protection of DEL-uxe's claimed lien for the amount owed for such agricultural supplies and shall remain in place until the earlier of (i) the parties' agreement with respect to the disposition of such account and any additional amount of pre-petition debt proven; (ii) the entry of a final non-appealable order of this Court after notice and a hearing providing for and determining the validity, enforceability and priority of DEL-uxe's claimed lien, and the disposition of the funds in such account, upon such notice and opportunity for hearing to DEL-uxe and all other persons claiming an interest in the funds in such account as this

Court shall provide and determine; or (iii) the entry of a final non-appealable order of this Court after notice and a hearing providing for other treatment or disposition of such account and funds.

15. With respect to any action filed by Hinton in this Court in which it seeks recognition of an alleged lien against the property of Big Sky and seeks adequate protection or asserts other rights on account of feed and other agricultural products supplied pre-petition to Big Sky, Hinton shall be accorded notice and an opportunity to assert and prove the validity, enforceability and priority of Hinton's claimed lien the same as all other persons claiming an interest in such property and the proceeds thereof.

16. Unless leave of this Court is granted, Big Sky shall maintain livestock located within the state of Iowa within 85% or more of the population of livestock owned by the Debtor and located within the state of Iowa on the date of the filing of the Petition herein.

17. This Court shall retain jurisdiction with respect to: (i) the enforcement, amendment or modification of this Order; (ii) any requests for adequate protection, additional relief, or any adversary proceeding brought in and through this Chapter 15 case; and (iii) any request by an entity for relief from the provisions of this Order, for cause shown as to any of the foregoing and provided that the same is properly commenced and within the jurisdiction of this Court.

This document constitutes judgment as required by Fed.R.Bankr.P. 9021.

DATED AND ENTERED  December 31, 2009

William L. Edmonds, Bankruptcy Judge

12